**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| UNIVERSITY OF TENNESSEE RESEARCH FOUNDATION and SAINT MATTHEW RESEARCH, LLC, | ) ) ) | |
| | ) | |
| *Plaintiffs*, | ) | Civil Action No. 3:17-cv-00185-HSM-CCS |
| | ) | |
| v. | ) | |
| | ) | |
| HEWLETT PACKARD ENTERPRISE COMPANY and HP ENTERPRISE SERVICES, LLC | ) ) ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS OR TRANSFER
FOR IMPROPER VENUE AND FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ......................................................................................................................1

II. FACTUAL BACKGROUND ....................................................................................................2

A.    Plaintiffs' Complaint Conclusorily Accuses Seven Products of Infringement....................2

B.    HPE Does Not Have a Regular and Established Place of Business in this
District....................................................................................................................................3

III. LEGAL STANDARD...............................................................................................................5

IV. ARGUMENT ...........................................................................................................................6

A.    Venue Is Improper for HPE .................................................................................................6

   1.    HPE Does Not Reside in the District........................................................................6

   2.    HPE Does Not Commit Acts of Infringement or Have a Regular and
         Established Place of Business in the District............................................................6

B.    If This Court Does Not Dismiss the Case, It Should Transfer the Action to
the Northern District Of California.....................................................................................17

C.    In Addition to Failing on Venue, the Complaint Should Be Dismissed
Because It Fails to State a Plausible Claim for Patent Infringement .................................19

   1.    The Complaint Must Allege Facts For Each Claim Limitation...........................19

   2.    Plaintiffs Fail to Allege Facts Showing How The Limitations Are Met. .............20

   3.    There is No Allegation That Any One Product Meets All the
         Limitations. .........................................................................................................24

CONCLUSION............................................................................................................................25

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*American Cyanamid v. Nopco Chem. Co.*,
    388 F.2d 818 (4th Cir. 1968) ......................................................................7, 11, 13

*Asghari-Kamrani v. United Servs. Auto. Ass'n*,
    No. 2:15-CV-478, 2016 WL 1253533 (E.D. Va. Mar. 22, 2016)...........................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................19

*Atlas IP, LLC v. Exelon Corp.*,
    189 F. Supp. 3d 768 (N.D. Ill. 2016) ......................................................19, 20, 24

*Barber-Greene Co. v. Blaw-Knox Co.*,
    239 F.2d 774 (6th Cir. 1957) ...................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................19

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017).............................................................................................17

*Brevel Prod. Corp. v. H & B Am. Corp.*,
    202 F. Supp. 824 (S.D.N.Y. 1962).........................................................................11

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco County*,
    137 S. Ct. 1773 (2017).............................................................................................17

*Brunette Machine Words, Ltd. v. Kockum Industries, Inc.*,
    406 U.S. 706 (1972).................................................................................................10

*Coleco Indus., Inc. v. Kransco Mfg., Inc.*,
    247 F. Supp. 571 (S.D.N.Y. 1965).........................................................................10

*Comcast Cable Comm'ns, LLC v. OpenTV, Inc.*,
    319 F.R.D. 269 (N.D. Cal. 2017)............................................................................20

*In re Cordis Corp.*,
    769 F.2d 733 (Fed. Cir. 1985).........................................................8, 9, 10, 13, 15

*Delta Media Grp., Inc. v. Kee Grp., Inc.*,
    No. 5:07-CV-01597, 2007 WL 3232432 (N.D. Ohio Oct. 31, 2007).....................19

ii

*e.Digital Corp. v. iBaby Labs, Inc.*,
   No. 15-CV-05790-JST, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016)................................23

*E.T. Mfg. Co., Inc. v. Xomed, Inc.*,
   No. 85-C-7133, 1986 WL 321 (N.D. Ill. Jan. 13, 1986)..................................................12, 15

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014).......................................................................................20, 24

*Faberge, Inc. v. Schick Elec., Inc.*,
   312 F. Supp. 559 (D. Del. 1970).............................................................................................13

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)...............................................................................................18

*General Radio Co. v. Superior Elec. Co.*,
   293 F.2d 949 (1st Cir. 1961).............................................................................................11, 16

*Herbert v. Diagnostic Products Corp.*,
   No. 85-Civ.-0856, 1986 WL 6781 (S.D.N.Y. June 10, 1986) .................................................12

*Tai v. Minka Lighting, Inc.*,
   No. CV-16-02810-PHX-DLR, 2017 WL 568519 (D. Ariz. Feb. 13, 2017)...........................23

*Jeffrey Galion, Inc. v. Joy Mfg. Co.*,
   323 F. Supp. 261 (N.D.W. Va. 1971) .....................................................................................16

*Johnson & Johnson v. Picard*,
   282 F.2d 386 (6th Cir. 1960) ..................................................................................................10

*Johnston v. IVAC Corp.*,
   681 F. Supp. 959 (D. Mass. 1987) ...............................................................................10, 11, 12

*Katz v. Lear Siegler, Inc.*,
   No. CIV-86-536E, 1987 WL 7234 (W.D.N.Y. Feb. 20, 1987), *vacated on
   other grounds*, 5 F.3d 1502 (Fed. Cir. 1993) .........................................................................16

*Knapp-Monarch Co. v. Casco Products Corp.*,
   342 F.2d 622 (7th Cir. 1965) ....................................................................................................8

*L. D. Schreiber Cheese Co., Inc. v. Clearfield Cheese Co., Inc.*,
   495 F. Supp. 313, 317-18 (W.D. Pa. 1980) ...........................................................................11

*Lace v. Lace*,
   No. 89 C 0414, 1989 WL 103364 (N.D. Ill. Aug. 28, 1989)................................................8, 12

Page(s)

*London v. Greene's Luggage, Inc.*,
    No. 86 C 4735, 1988 WL 64586 (N.D. Ill. June 15, 1988) ....................................................12

*Macronix Int'l Co. v. Spansion Inc.*,
    4 F. Supp. 3d 797 (E.D. Va. 2014) ......................................................................................20

*MAGICorp. v. Kinetic Presentations, Inc.*,
    718 F. Supp. 334 (D.N.J. 1989) ....................................................................................11, 13

*Marion v. Conley*,
    No. 306-CV-268, 2006 WL 4608613 (E.D. Tenn. Oct. 4, 2006) ..............................................5

*Mastantuono v. Jacobsen Mfg. Co.*,
    184 F. Supp. 178 (S.D.N.Y. 1960)..................................................................................10, 11

*Minn. Min. & Mfg. Co. v. Johnson & Johnson Prod., Inc.*,
    No. CIV. 4-86-359, 1987 WL 10997 (D. Minn. Jan. 2, 1987) ...............................................11

*Novitaz, Inc. v. inMarket Media, LLC*,
    No. 16-cv-6795, 2017 WL 2311407 (N.D. Cal. May 26, 2017)..................................19, 20, 22

*Phillips v. Baker*,
    121 F.2d 752 (9th Cir. 1941) ...............................................................................................13

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
    2016 WL 927143 (D. Del. Mar. 4, 2016) ..................................................................20, 22, 23

*Raytheon Co. v. Cray, Inc.*,
    No. CV 2:15-CV-01554-JRG, 2017 WL 2813896 (E.D. Tex. June 29, 2017)......................14

*Reese v. CNH Am. LLC*,
    574 F.3d 315 (6th Cir. 2009) ...............................................................................................17

*Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*,
    645 F. Supp. 2d 1130 (S.D. Fla. 2009) .................................................................................11

*Roxane Labs., Inc. v. Camber Pharm. Inc.*,
    666 F. App'x 899 (Fed. Cir. 2016) .......................................................................................17

*Scaramucci v. FMC Corp.*,
    258 F. Supp. 598 (W.D. Okla. 1966) ..............................................................................15, 16

*Schnell v. Peter Eckrich and Sons, Inc.*,
    365 U.S. 260 (1961)........................................................................................................13, 16

*Scripps Research Inst. v. Illumina, Inc.*,
  No. 16-CV-661-JLS-(BGS), 2016 WL 6834024 (S.D. Cal. Nov. 21, 2016)....................22, 23

*Silicon Tech., Inc. v. United Refractories, Inc.*,
  632 F. Supp. 1 (W.D. Pa. 1985).............................................................................10

*Stonite Products Co. v. Melvin Lloyd Co.*,
  315 U.S. 561 (1942)..............................................................................................13

*Stuebing Automatic Mach. Co. v. Gavronsky*,
  No. 1:16-CV-576, 2017 WL 3187049 (S.D. Ohio June 12, 2017).....................................5, 12

*Surgical Laser Tech., Inc. v. Cooper Lasersonics, Inc.*,
  No. 87 C 10651, 1988 WL 40961 (N.D. Ill. Apr. 26, 1988)...........................................12

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017)................................................................................1, 6, 13

*QFO Labs, Inc. v. Parrot, Inc.*,
  No. 16-CV-3443 (JRT/HB), 2017 WL 2638389 (D. Minn. May 26, 2017)..............................6

*TeleSign Corp. v. Twilio, Inc.*,
  No. CV 16-2106 PSG (SSX), 2016 WL 4703873 (C.D. Cal. Aug. 3, 2016).........................25

*Thermolife Int'l, LLC v. F3 Nutrition, LLC*,
  No. CV-13-6883-RGK-PLAx, 2013 WL 12149682 (C.D. Cal. Dec. 9, 2013) .......................11

*Thomas v. Exxon Mobil Oil Corp.*,
  No. 206-CV-144, 2007 WL 1035159 (N.D. Ind. Apr. 2, 2007) ............................................17

*Univ. of Ill. Found. v. Channel Master Corp.*,
  382 F.2d 514 (7th Cir. 1967) ...........................................................................7, 11

*W.S. Tyler Co. v. Ludlow-Saylor Wire Co.*,
  236 U.S. 723 (1915)....................................................................................7, 8, 9

*Warner-Lambert Co. v. C.B. Fleet Co., Inc.*,
  583 F. Supp. 519 (D.N.J. 1984) .......................................................................11, 13

**Statutes**

28 U.S.C. § 1400.....................................................5, 6, 7, 9, 10, 11, 13, 14, 15, 16

28 U.S.C. § 1404..............................................................................................17

28 U.S.C. § 1406...........................................................................................5, 17

Page(s)

**Rules**

Rule 12(b)(3)..................................................................................................................5

Rule 12(b)(6)..................................................................................................................1

# I. INTRODUCTION

Just three months ago (after Plaintiffs filed their complaint in this patent infringement case), the United States Supreme Court issued a decision that compels this Court to dismiss or transfer this action for improper venue. That decision, *TC Heartland LLC v. Kraft Foods Grp. Brands LLC,* 137 S. Ct. 1514 (2017), expressly overruled the authority that Plaintiffs allege justifies filing their complaint in this district. Indeed, *TC Heartland* makes clear that a domestic corporation may be sued for patent infringement only (1) where it is incorporated, or (2) where it has committed infringing acts and has a regular and established place of business. Defendant Hewlett Packard Enterprise Company ("HPE") meets neither criteria. Accordingly, HPE respectfully requests that this Court dismiss HPE for improper venue, or, in the alternative, transfer HPE to the Northern District of California, a district where venue would be proper.

HPE is a Delaware corporation headquartered in Palo Alto, California, with no place of business in this district. Of the over 70,000 HPE employees, seventeen happen to work from their homes in this district—but their homes are not HPE's place of business and the work they do does not relate to the products accused of infringement. Accordingly, regardless of whether the Court focuses on all of HPE's business activities or only on those related to the accused products, venue in this district is improper. By contrast, venue in the Northern District of California is proper and the case should be transferred there because that is where the bulk of the evidence pertaining to HPE is located. Indeed, HPE expects that Northern California will emerge as a common forum for many, if not all, of the related actions brought by Plaintiffs.

Moreover, in addition to failing on venue, the Complaint should be dismissed pursuant to Rule 12(b)(6) because it fails to state a plausible claim for infringement. A patent infringement complaint must allege facts to show how the accused products supposedly satisfy every limitation

1

of at least one patent claim. But for many of the limitations here, the Complaint merely parrots the claim language, offering a bare legal conclusion without any relevant factual allegations. Such threadbare allegations are not enough to plead a plausible claim for infringement.

## II. FACTUAL BACKGROUND

### A.    Plaintiffs' Complaint Conclusorily Accuses Seven Products of Infringement

Plaintiffs are the University of Tennessee Research Foundation ("UTRF") and an entity to which it has allegedly granted an exclusive license to the patents-in-suit, Saint Matthew Research Foundation. *See* ECF No. 1 ¶¶ 20-24. They filed this action against HPE and HP Enterprise Services, LLC ("HPES")[1] on May 2, 2017, alleging infringement of four patents: U.S. Patent Nos. 8,099,733 (the "'733 patent"), 6,741,983 (the "'983 patent"), 7,272,612 (the "'612 patent"), and 7,882,106 (the "'106 patent"). *See id.* ¶¶ 54-141.

HPE runs its business operations, including those related to the products Plaintiffs accuse of infringing their patents, entirely from outside this district. HPE is a Delaware corporation, headquartered in Palo Alto, California. ECF No. 1 ¶ 26. HPE sells many products, including servers, software, and related services to large and small businesses. Plaintiffs accuse three products of patent infringement: Helion CloudSystem (versions 9.0 and 10.0), Helion OpenStack (versions 3.0 and 4.0), and Vertica (versions 8.1.x, 8.0.x, and 7.2.x) (collectively, the "Accused Products"). *Id.* ¶¶ 56, 85, 108, 126. Plaintiffs' Complaint, however, does not allege facts plausibly showing that any of these Accused Products—much less all of them—infringe any claim of any of the patents. All of the Accused Products are enterprise software offerings, meaning that they

---

[1] HPES ceased to exist prior to filing of Plaintiffs' Complaint, and the parties have jointly moved to dismiss it from this lawsuit. *See* ECF No. 24.

are sold to and used by businesses, not retail consumers. The accused Helion products are open source cloud computing software, and the Vertica products are data analytics software.

The Accused Products can be run on a variety of servers. Customers might use their own equipment to run an Accused Product or they might run an Accused Product on a third party's "cloud" servers—i.e., a server maintained separately and remotely from the customer's other IT infrastructure. When customers desire to use the Accused Products, they can download the software over the Internet from servers located outside this district. HPE does not own or operate server farms—or any other facility—in this district. And HPE runs its operations from outside the district, including from its corporate headquarters in Palo Alto.

## B.     HPE Does Not Have a Regular and Established Place of Business in this District

HPE neither owns nor rents a single facility, building, or other piece of real estate, nor operates any other place of business in the Eastern District of Tennessee. Ex. A (Eaton Decl.) ¶ 3. HPE runs its operations from its Palo Alto headquarters and from other offices outside the Eastern District of Tennessee.

HPE has over 70,000 employees worldwide. *Id.* ¶ 4. Less than 0.03% of HPE's employees (17) live in the Eastern District of Tennessee. *Id.* Those 17 employees work from their homes or from customer sites. *Id.* ¶¶ 3-4. None of them works from any HPE office or other facility in the district, because no such place exists. *Id.* ¶ 3. And none of them works on the Accused Products, which are three software products. *Id.* ¶ 5-6. Instead, their activities focus entirely on other products and lines of business that have nothing to do with this lawsuit. For example, they repair and install various HPE networking hardware. *Id.* ¶ 6.

The complaint does not allege that HPE even has a *place* of business in this district. The only basis offered for Plaintiffs' assertion of venue is that HPE is registered to do business in

Tennessee and on "information and belief" has committed acts of infringement and is doing business in the district, including by "partnering" with local retailers who resell its products. ECF No. 1 ¶¶ 28, 31. Specifically, Plaintiffs allege that HPE "has partnered with several businesses throughout the State of Tennessee, including several Knoxville businesses, including, for example, Computer Systems Plus and GAMA Network Solutions LLC." *Id.* ¶ 28. This allegation appears to refer to third-party businesses that are part of the "HPE Partner Ready for Technology Partner Program," of which there are approximately 7,000 nationwide. Ex. A ¶ 7. This program allows "independent software vendors (ISVs) and independent hardware vendors (IHVs) to integrate, test, and market [their] products with industry-leading HPE technology" by giving them access to HPE product and marketing information. *See id.* ¶ 8; Ex. B (2017 Program Guide) at 4. Independent vendors may become a "business partner" for free or pay a membership fee, ranging from $5,000 to $20,000, to obtain a higher "partnership level."[2] *Id.* at 8. They can thereby receive discounts on HPE products and be listed on the HPE "Find a Partner" website, Ex. D. The HPE Partner Ready for Technology Partner Program is available to vendors regardless of where they are located in the United States. Ex. A ¶¶ 7-9.

Regardless of their "partnership level," the vendors remain independent: HPE does not exercise any control over their sales or other activities. The agreement each such vendor "partner" must sign makes clear that the partner remains "solely responsible for [its] acts, omissions, obligations, representations, or misrepresentations in providing [its] services to Customers." Ex. A ¶ 9; Ex. C ¶ 11(d). That agreement further defines the relationship between HPE and such

---

[2] The two businesses referred to in Plaintiffs' complaint, Computer Systems Plus and GAMA Network Solutions LLC, are both at the lowest "business partner" level of the program, meaning that they may access the program without making any payments to HPE. *See* Ex. A ¶ 7; Ex. D.

4

partners, specifying that they are "independent contractors" who do not have "a franchise, joint venture or partnership," or any relationship of "principal and agent." Ex. C ¶ 16(i). Likewise, HPE has no control over where in the United States these vendor "partners" operate. *See id.* ¶ 2(e). The two such independent vendors named in the complaint sold less than $510,000 worth of HPE products in the last three years, and none of the Accused Products. Ex. A ¶ 7. That is a tiny fraction of HPE's revenues for the last three years, which exceeded $150 billion. *See* HPE 2016 10-K, available at http://investors.hpe.com/~/media/Files/H/HP-Enterprise-IR/documents/hpe-2016-10k.pdf.

### III. LEGAL STANDARD

Under Rule 12(b)(3) and 28 U.S.C. § 1406(a), a "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "In considering a Rule 12(b)(3) motion to dismiss, the plaintiff bears the burden of proving that venue is proper." *Marion v. Conley*, No. 306-CV-268, 2006 WL 4608613, at *1 (E.D. Tenn. Oct. 4, 2006) (quotation marks omitted). Further, because "'venue in the federal courts is a privilege personal to each defendant,'" the plaintiff must prove that venue is proper as to *each* defendant; even if venue is proper as to one, it may still be improper as to another. *Stuebing Automatic Mach. Co. v. Gavronsky*, No. 1:16-CV-576, 2017 WL 3187049, at *3 (S.D. Ohio June 12, 2017) (quoting *Barber-Greene Co. v. Blaw-Knox Co.*, 239 F.2d 774, 777 (6th Cir. 1957)).

Venue in patent cases is governed by a special statute, 28 U.S.C. § 1400(b), which permits venue "[1] in the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." The Supreme Court recently reaffirmed that, "[a]s applied to domestic corporations, 'reside[nce]' in § 1400(b)

5

refs only to the State of incorporation," overturning the much more permissive interpretation that the Federal Circuit had applied since 1990. *TC Heartland*, 137 S. Ct. at 1519-21. As a result, venue is proper only in a district where the domestic defendant is incorporated or has committed acts of infringement and has a regular and established place of business. *See id.* at 1516-17.

## IV. ARGUMENT

### A. Venue Is Improper for HPE

#### 1. HPE Does Not Reside in the District

HPE does not meet the first possible ground for venue. The complaint correctly alleges that HPE is a domestic corporation, incorporated in Delaware. ECF No. 1 ¶ 26. Because "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute," *TC Heartland*, 137 S. Ct. at 1517, HPE resides in Delaware—not in Tennessee.

#### 2. HPE Does Not Commit Acts of Infringement or Have a Regular and Established Place of Business in the District

Nor does HPE meet the second possible ground for venue: "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). As an initial matter, HPE denies that it has committed acts of infringement *anywhere*, including here. Even assuming infringement in this district, however, venue is improper because (a) HPE lacks *any* "regular and established place of business" in this district, and (b) HPE does not commit any acts of infringement connected to any place of business in this district.

**a. *First***, HPE does not maintain a regular and established place of business for *any* purposes in this district. Notably, the complaint does not attempt to "*allege* that [HPE] 'has a regular and established place of business' in the [district]"—so its allegations are not sufficient to establish venue after *TC Heartland*. *QFO Labs, Inc. v. Parrot, Inc.*, No. 16-CV-3443 (JRT/HB), 2017 WL 2638389, at *6 (D. Minn. May 26, 2017) (emphasis added).

6

And, indeed, HPE has no "place of business" in the district at all. HPE does not own, rent, operate, or otherwise maintain any real estate in the district. *See* Ex. A ¶ 3. Of HPE's more than 70,000 employees, 17—less than 0.03%—have *home addresses* in the district. *Id.* ¶ 4. Those employees' homes are personal, private residences, under the sole control of the employees. While HPE allows these employees to work from their homes, away from any corporate office, HPE does not hold out these employees' homes as its place of business. If "[t]here is nothing on the outside of [an employee's] home to indicate that [the defendant]'s business is conducted there or that a company representative is inside," then "it cannot be said" that the home is the defendant's place of business. *American Cyanamid v. Nopco Chem. Co.*, 388 F.2d 818, 820 (4th Cir. 1968); *accord*, *e.g.*, *Univ. of Ill. Found. v. Channel Master Corp.*, 382 F.2d 514, 516 (7th Cir. 1967).

HPE does have customers with places of business in the Eastern District of Tennessee, just as it does throughout the United States. But those places of business belong to customers—not HPE. Likewise, the fact that there are independent vendors who participate in the HPE Partner Ready for Technology Partner Program does not mean that HPE itself has a place of business here. That program gives participating vendors discounts on HPE products. It does not grant HPE any substantive control over their business; to the contrary, vendors remain "independent" and responsible for their own acts and omissions. Ex. C ¶¶ 11(d), 16(i).

Such limited interactions do not constitute "a regular and established place of business" under § 1400(b). In *W.S. Tyler*, a patent case considering the same statutory language, the Supreme Court held that the mere employment of a sales representative, working out of a small office, in the district did not suffice to establish venue. *See W.S. Tyler Co. v. Ludlow-Saylor Wire Co.*, 236 U.S. 723, 725 (1915). There, the defendant, a Missouri corporation with its home office in St. Louis, had an employee who acted as its "Eastern representative," working out of an office in New

7

York City.  *Id.*  This employee used the office as his "headquarters as representative" for the defendant and a second company by which he was also employed.  The defendant paid a portion of the rent and related business expenses for that office.  *Id.*  The employee solicited sales of the accused product in the district and forwarded orders to the defendant's St. Louis office, which then sent the products in question from outside the district to customers in the district.  *Id.*  The Supreme Court held these facts "insufficient to support the allegation that [the defendant] had a regular and established place of business" in New York for purposes of the patent venue statute.  *Id.*  Thus, unless the defendant itself operates a physical place of business in the district, it cannot be held to have a "regular and established" place of business—regardless of the presence of some employees in the district.  *See id.*

The facts here are even more remote than those the Supreme Court held to be insufficient to establish venue in *W.S. Tyler*.  Here, there is no commercial office space for which HPE pays rent.  The 17 HPE employees who live in the district work from their homes or at customer sites, and the work they do does not relate to the Accused Products.  Ex. A ¶¶ 4-6; *see Lace v. Lace*, No. 89 C 0414, 1989 WL 103364, at *3 (N.D. Ill. Aug. 28, 1989) (the presence of an employee who "travels from customer to customer soliciting orders" cannot establish proper venue).

The few third-party companies in the district who are part of the HPE Partner Ready for Technology Partner Program are even further removed.  They are not HPE employees, and thus are irrelevant even under an expansive definition of "regular and established place of business."  *See* Ex. C ¶ 16(i); *In re Cordis Corp.*, 769 F.2d 733, 735-36 (Fed. Cir. 1985).  HPE does not pay them a salary, nor does it pay any portion of their rent or other business expenses.  They remain "solely responsible" for their activities, they are not franchisees or partners in a legal sense, and they cannot act as "agent[s]" for HPE.  *Id.* ¶¶ 11(d), 16(i); *see Knapp-Monarch Co. v. Casco*

8

*Products Corp.*, 342 F.2d 622, 625 (7th Cir. 1965) (an "authorized repair station" is not the defendant's place of business if it is "independently operated"). Moreover, it is they, not HPE, who decide where in the United States they will locate their place of business. *Id.* ¶ 2(e).

While such third-party companies may both purchase *and* resell HPE products, that fact does not distinguish them from any other customer for purposes of the venue analysis. HPE does not hold out the places of its customers (be they "partner" vendors or end users), nor its employees' homes, as its own place of business, much less any kind of regional "headquarters"—as were the facts in *W.S. Tyler*, which even there were not enough to rise to a "regular and established place of business." 236 U.S. at 725. And, like the defendant in *W.S. Tyler*, HPE does not fulfill orders for the Accused Products from any location within the district. *Id.*

*W.S. Tyler* is the only binding authority here. The Federal Circuit has just once addressed a dispute over whether a corporation had a "regular and established place of business" under Section 1400(b). *See Cordis*, 769 F.2d at 736-37. In *Cordis*, the court denied a defendant's petition for mandamus seeking to overturn a district court's assertion of venue, because the court of appeals discerned no "clear abuse of discretion" in the district court's ruling. *Id.* at 736 (citation omitted). There, two of the defendant's local employees (for whom the defendant supplied a company car) maintained a substantial inventory of infringing pacemakers (roughly $90,000 worth) in their home offices, some of which they sold directly to local customers. *Id.* at 735. The corporate defendant was listed in the local phone directory, and used a local secretarial service to answer calls as the defendant. *Id.* Under those specific facts, the court held that the extraordinary remedy of mandamus was not warranted. *Id.* at 736. However, it cautioned that it was deciding only that "a rational and substantial legal argument may be made in support of the [district] court's order," and *not* whether, "on a normal appeal," it "would find reversible error." *Id.* at 737. The Federal Circuit

9

has not since addressed the "regular and established place of business" prong of the statute.

Notwithstanding the Federal Circuit's relative silence, the law concerning this prong of the statute has continued to develop both in the Supreme Court and elsewhere. Courts have long held that "regular and established place of business" means more than merely "doing business." *See*, *e.g.*, *Mastantuono v. Jacobsen Mfg. Co.*, 184 F. Supp. 178, 180 (S.D.N.Y. 1960); *Johnston v. IVAC Corp.*, 681 F. Supp. 959, 964 (D. Mass. 1987) (collecting cases). Indeed, the Supreme Court made this clear in *Brunette Machine Words, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706 (1972). There, the Court explained that the special patent venue statute—which has not substantively changed since its enactment in 1897—was far more limited that the general venue statute in effect at the time of *Brunette*, which authorized suit where a corporation was "doing business" or where "the claim arose." *Id.* at 713 n. 13 (citation omitted).

Thus, Section 1400(b) requires more than merely having sales, advertising, or employees in the district. Instead, the defendant must maintain a physical "place" of business. *See Coleco Indus., Inc. v. Kransco Mfg., Inc.*, 247 F. Supp. 571, 575 (S.D.N.Y. 1965) ("This 'place of business' can be a branch office, a sales-showroom, or a warehouse or distribution center. But it must be maintained and paid for by the defendant." (citation omitted)); *Johnson & Johnson v. Picard*, 282 F.2d 386 (6th Cir. 1960) (venue improper where defendant has an "agent" but no "branch office"); *Silicon Tech., Inc. v. United Refractories, Inc.*, 632 F. Supp. 1, 2 (W.D. Pa. 1985) ("the defendant did not own or control any physical property within the district and thus venue was improper") (collecting cases). As catalogued in *Johnston*, most courts have held that "venue is proper only if the defendant maintains, controls, and pays for a permanent physical location from which sales are made within the district." 681 F. Supp. at 962.

While a physical presence is required under this line of cases, they also recognize that

10

"mere maintenance of an office in a district is not sufficient" in and of itself. *Brevel Prod. Corp. v. H & B Am. Corp.*, 202 F. Supp. 824, 828 (S.D.N.Y. 1962); *see American Cyanamid*, 388 F.2d at 819-20; *Channel Master*, 382 F.2d at 515-16; *General Radio Co. v. Superior Elec. Co.*, 293 F.2d 949, 950-51 (1st Cir. 1961); *Warner-Lambert Co. v. C.B. Fleet Co., Inc.*, 583 F. Supp. 519, 521-23 (D.N.J. 1984). Rather, even where "it is undisputed that the defendant leases office space in the district, it is necessary for the court to inquire whether the plaintiff has proved that the defendant engages in *a substantial part of its ordinary business* in a continuous manner in the district." *MAGICorp. v. Kinetic Presentations, Inc.*, 718 F. Supp. 334, 340 (D.N.J. 1989) (emphasis added); *accord, e.g., Thermolife Int'l, LLC v. F3 Nutrition, LLC*, No. CV-13-6883-RGK-PLAx, 2013 WL 12149682, at *1 (C.D. Cal. Dec. 9, 2013); *Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1145 (S.D. Fla. 2009); *Mastantuono*, 184 F. Supp. at 180. Applying this rule, "venue has been held not to exist over corporate defendants even in instances where the corporation maintained an office in the district to solicit orders, for service of process, or for maintenance and repair of equipment," and where "sales representatives or supervisory personnel" or "phone listings, post office addresses or bank accounts" are present. *L. D. Schreiber Cheese Co., Inc. v. Clearfield Cheese Co., Inc.*, 495 F. Supp. 313, 317-18 (W.D. Pa. 1980) (citations omitted).[3]

While *Cordis* distinguished some of these cases on their facts, most courts continued to follow the majority approach even after *Cordis*, stressing that the Federal Circuit there had decided

---

[3] A minority of district courts have taken a broader view of Section 1400(b)—but even they are careful to note that the mere "presence of sales employees in the district is not enough." *Johnston*, 681 F. Supp. at 963 (quoting *Minn. Min. & Mfg. Co. v. Johnson & Johnson Prod., Inc.*, No. CIV. 4-86-359, 1987 WL 10997, at *3 (D. Minn. Jan. 2, 1987)) (punctuation omitted).

only to deny the extraordinary remedy of mandamus because "a 'rational and substantial legal argument' can be made to uphold the district court's finding based on the local sales representatives' activities out of their homes." *Johnston*, 681 F. Supp. at 964; *accord*, *e.g.*, *Herbert v. Diagnostic Products Corp.*, No. 85-Civ.-0856, 1986 WL 6781, at *4 (S.D.N.Y. June 10, 1986); *London v. Greene's Luggage, Inc.*, No. 86 C 4735, 1988 WL 64586, at *3 (N.D. Ill. June 15, 1988); *Lace*, 1989 WL 103364, at *2 n.5. Thus, even after *Cordis*, decisions such as *Herbert* hold that the presence of local sales representatives who both solicited local orders and handled phone calls in the district merely "establishe[d] [the defendant's] presence in the district," not "a regular and established place of business." 1986 WL 6781, at *4; *see also E.T. Mfg. Co., Inc. v. Xomed, Inc.*, No. 85-C-7133, 1986 WL 321, at *2 (N.D. Ill. Jan. 13, 1986) (sales of accused products through employees in the district is insufficient without the sort of direct sales and technical involvement at issue in *Cordis*); *London*, 1988 WL 64586, at *2-3 (same); *Johnston*, 681 F. Supp. at 964 (same).

Consistent with this majority approach, another court in this circuit, in one of the first decisions to address the patent venue statue after *TC Heartland*, held that visiting the district to make sales, owning an inactive piece of real property, communicating "by email or telephone with customers in the [district]," and "ship[ping] product . . . to customers in th[e] district does not establish that defendants have a permanent and continuous presence" in the district. *Stuebing*, 2017 WL 3187049 at *4 (citing *Johnston*, 681 F. Supp. at 964).

Likewise, the activities of the handful of HPE employees who live in this district does not suffice. Unlike the employees in *Cordis*, the 17 HPE employees here do not maintain inventory in their homes or make direct sales. *See Surgical Laser Tech., Inc. v. Cooper Lasersonics, Inc.*, No. 87 C 10651, 1988 WL 40961, at *1, *3 (N.D. Ill. Apr. 26, 1988) (distinguishing *Cordis* on this basis). Their homes are nowhere listed as HPE offices, and they do not employ a local

12

secretarial service held out as an HPE office. In addition, as explained in more detail below, these employees' activities do not relate to the Accused Products. *Contra Cordis*, 769 F.2d at 735.

Moreover, it is beyond dispute that under the majority rule catalogued in *Johnston* and applied there and elsewhere, HPE has *no* "regular and established place of business" because it maintains no physical location at all in this district. Its employees' "home[s] in which [they] carr[y] on some of the work that [they] do[] for" HPE are not *HPE's* offices. *American Cyanamid*, 388 F.2d at 820. Similarly, "[t]he premises of" HPE's "customer[s] within the district" cannot be *HPE's* "'established place of business,'" even if its employees visit those premises. *Phillips v. Baker*, 121 F.2d 752, 756 (9th Cir. 1941). Those premises do not "h[o]ld themselves out as sales offices or branches of" HPE. *Faberge, Inc. v. Schick Elec., Inc.*, 312 F. Supp. 559, 561 (D. Del. 1970). Additionally, HPE does not carry on "a *substantial part* of its ordinary business" in this forum (*id.*; *MAGICorp*, 718 F. Supp. at 340-41 (emphasis added)): Fewer than one one-thousandth of its employees live in this district. It cannot be said that the activities of these 17 people constitute a "substantial part" of HPE's business. For all these reasons, venue is improper.

This result is consistent with "the policy embodied by section 1400(b)," namely to curb "patent infringement suits brought far from an alleged infringer's place of business" and "impose[] the burden on the patent holder of suing far from its place of business." *Warner-Lambert*, 583 F. Supp. at 526. Section 1400(b) "is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Schnell v. Peter Eckrich and Sons, Inc.*, 365 U.S. 260, 264 (1961) (citation omitted). It derives from a statute enacted as "a restrictive measure, limiting a prior, broader venue." *Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 566 (1942); *see also TC Heartland*, 137 S. Ct. at 1518. It must therefore be interpreted narrowly. *See Warner-Lambert*, 583 F. Supp. at 526.

13

To be sure, not all courts are content to narrowly construe Section 1400.  A judge in the Eastern District of Texas recently did just the opposite, finding that the presence of a sales representative who made over $345 million in sales from his home in that district was sufficient to establish venue.  *See Raytheon Co. v. Cray, Inc.*, No. CV 2:15-CV-01554-JRG, 2017 WL 2813896, at *1 (E.D. Tex. June 29, 2017).  That court announced four factors it considered to reach that result:  (1) "physical presence" in the district, (2) "defendant's representations" regarding its presence in the district, (3) "the extent to which a defendant derives benefits from" a presence in the district, and (4) "targeted interactions with the district."  *Id.* at *11-13.  But only the first of those factors is tied to the statutory language.  The rest run contrary to *W.S. Tyler*, as well as the majority line of cases described above, because they attempt to substitute other things, i.e., "representations," "benefits," and "interactions," for what Section 1400(b) requires—"a regular and established *place* of business."  28 U.S.C. § 1400(b) (emphasis added).[4]

But even if the Court were to consider these other factors (and it should not), they do not support a finding of venue here.  HPE does not represent that any of the homes of the 17 HPE employees in this district are its place of business.  And those 17 employees are just a tiny percentage (namely, less than 0.03%) of HPE's overall workforce—meaning that the overwhelming majority of the work HPE does occurs, and the benefits associated with that work are derived from, outside this district, unlike *Raytheon*, where over $345 million dollars in sales were attributable to the work of an employee in the district.  Finally, while HPE does market and

---

[4]  The defendant in *Raytheon* has petitioned the Federal Circuit for a writ of mandamus, seeking to vacate the district court's four-factor test and correct its venue determination.  *See* Petition, *In re Cray Inc.*, No. 2017-129 (Fed. Cir. July 17, 2017) (ECF No. 1).  The Federal Circuit requested briefing from the patentee in response to that petition, and briefing is now complete.  *See* Order, *In re Cray Inc.*, No. 2017-129 (Fed. Cir. July 18, 2017) (ECF No. 7).

sell to customers in Tennessee, the same can be said for every state and district in the country. To find that such activities amount to a "regular and established place of business" is tantamount to declaring that venue is proper nationwide—a finding that cannot be reconciled with even the most outlying precedent, much less the majority rule.

b. **Second**, even assuming *arguendo* that the homes of HPE's employees, the sites of HPE's customers, or some combination thereof could be considered a "regular and established place of business" for *some* purposes (and, as discussed above, they cannot), venue would still be improper. As cataloged in the Statement of Facts above, none of the handful of HPE employees who lives in the district has anything to do with the Accused Products. Those employees do work pertaining to different and separate lines of business at HPE that are not at issue in this case.

For venue to be proper under Section 1400(b), a nonresident defendant must at a minimum maintain a "'permanent and continuous presence,' *with respect to its [accused functionality]*"— including by engaging in "direct in-state sales and inventory" of the accused product and providing "technical support *with respect to the allegedly infringed product*." *E.T.*, 1986 WL 321, at *2 (emphasis added). Indeed, it was on this basis that the Federal Circuit in *Cordis* distinguished *Channel Master*, one of the cases following the majority approach to venue. *Cordis* stated that, in *Channel Master*, "while there was evidence that the sales representative [in the district] conducted seminars with distributors to promote his employer's products, there was no evidence to demonstrate that such activities were carried on *concerning the specific product which was the subject of the infringement action*." 769 F.2d at 737.

Thus, an "office" in the district "will not satisfy the requirement of [the] special patent venue statute" if the office has "absolutely nothing to do with the accused [product] or its manufacture, sale, service or distribution." *Scaramucci v. FMC Corp.*, 258 F. Supp. 598, 602

15

(W.D. Okla. 1966); *accord, e.g.*, *Jeffrey Galion, Inc. v. Joy Mfg. Co.*, 323 F. Supp. 261, 265-66 (N.D.W. Va. 1971) (a "Repair and Rebuild Shop" that "does not solicit or accept orders for mining equipment" does not suffice in a case alleging infringement of patent on mining equipment (citing *Scaramucci*, 258 F. Supp. at 602)). Similarly, a salesperson's presence in the district does not support venue where the salesperson "does not service the alleged infringing [products] manufactured by" the defendant. *General Radio*, 293 F.2d at 950. Rather, "there must be some reasonable or significant relationship between the accused item and any regular and established place of business of the accused in the judicial district." *Scaramucci*, 258 F. Supp. at 602; *accord, e.g.*, *Katz v. Lear Siegler, Inc.*, No. CIV-86-536E, 1987 WL 7234, at *2 (W.D.N.Y. Feb. 20, 1987), *vacated on other grounds*, 5 F.3d 1502 (Fed. Cir. 1993) ("the regular established business contemplated by the statute [must] be concerned in some way with the accused items").

Indeed, the statute's language and purpose do not bear a reading that would absolve Plaintiffs of their burden to show any connection between the accused product and the asserted place of business. The statute addresses a particular location, "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Thus, the statute explicitly requires a relationship between the situs of infringement and the established place of business; these cannot be different places. And, as *Scaramucci* explained, the Supreme Court has specifically rejected a "liberal construction" of Section 1400(b), and held that it "was intended to narrow or restrict" the prior grant of venue "wherever the offender could be served." 258 F. Supp. at 601-02 (citing *Schnell*, 365 U.S. at 262). Other courts too have explained that Congress sought to restrict venue to locations where pertinent records and witnesses are kept. *Id.* at 602 (collecting cases). Allowing venue in every district where a defendant has employees or even an actual place of business, no matter how unrelated to the alleged infringement, would

16

again impermissibly broaden the venue statute that the Supreme Court just two months ago restored to its proper scope.  It would also run contrary to the Supreme Court's recent admonition, in cases addressing the related issue of personal jurisdiction, that a defendant should not be subject to suit in a venue based solely on the fact that a product it markets nationwide is sold or used there. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco County*, 137 S. Ct. 1773, 1783 (2017); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017).  Thus, venue is not proper here.

**B.      If This Court Does Not Dismiss the Case, It Should Transfer the Action to the Northern District Of California**

Because venue is improper, HPE should be dismissed or alternatively transferred to where venue is proper and it is "in the interest of justice" to do so.  *See* 28 U.S.C. § 1406(a).  Here, the Northern District of California would serve this purpose as the most convenient location for the resolution of Plaintiffs' allegations.  *See Thomas v. Exxon Mobil Oil Corp.*, No. 206-CV-144, 2007 WL 1035159, at *1 (N.D. Ind. Apr. 2, 2007) (transfer under Section 1406(a) considers factors similar to those under 28 U.S.C. § 1404(a), including "whether the transferee forum is convenient to the parties and witnesses"); *Roxane Labs., Inc. v. Camber Pharm. Inc.*, 666 F. App'x 899, 901 (Fed. Cir. 2016) (transfer under Section 1404(a) is appropriate to the district where the defendant's "operations and employees" and "documentary evidence relating to the marketing and sales of the accused products" are located and "the accused products were designed and developed") (citing *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009)).

HPE is headquartered in Palo Alto, within the Northern District of California.  ECF No. 1 ¶ 26.  HPE runs its business operations from these Northern California headquarters.  The Accused Products were developed there, and are marketed from there.  HPE documents and witnesses are located there, which is of particular import because "[i]n patent infringement cases, the bulk of the

17

relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). California should also be convenient for Plaintiffs. One of the two plaintiffs, Saint Matthew Research, LLC, is a California company with its principal place of business in Los Angeles. ECF No. 1 ¶ 25. Plaintiffs' counsel is also based in Los Angeles, which is much closer to the Northern District of California than it is to this district.

Indeed, HPE expects that the Northern District of California will emerge as a district that is both convenient and proper for many of the defendants in the related actions filed by Plaintiffs on the same patents-in-suit. Between May 2 and 3, 2017, Plaintiffs filed eight actions in this Court, asserting largely the same patents.[5] The Court found that "all these cases are related" and so assigned them to the same judge. *See* Order, No. 3:17-CV-185 (May 8, 2017) (ECF No. 5).[6]

Many of these cases could be consolidated, along with this one, in the Northern District of California. Citrix, Cloudera, and SAP have already moved to transfer the cases against them to the Northern District of California.[7] While IBM is a New York corporation, it has major presences in Silicon Valley—including Foster City and San Jose (both in the Northern District of

---

[5]  *See UTRF v. Amazon.com, Inc.*, No. 3:17-CV-181; *UTRF v. Microsoft Corp.*, No. 3:17-CV-184; *UTRF v. Oracle Am., Inc.*, No. 3:17-CV-186; *UTRF v. SAP America, Inc.*, No. 3:17-CV-187; *UTRF v. Citrix Sys., Inc.*, No. 3:17-CV-191; *UTRF v. Cloudera, Inc.*, No. 3:17-CV-192; *UTRF v. Int'l Bus. Mach. Corp.*, No. 3:17-CV-193; *UTRF v. Teradata Operations, Inc.*, No. 3:17-CV-194.

[6] Plaintiffs subsequently dismissed the cases against Citrix and Cloudera and refiled them in the Middle District of Tennessee.

[7]  *See UTRF v. Citrix Systems, Inc.*, No. 3:17-cv-894 (M.D. Tenn.), ECF No. 30 at 2-4, 9-12; *UTRF v. Cloudera, Inc.*, No. 3:17-cv-895 (M.D. Tenn.), ECF No. 1 ¶ 26, ECF No. 29 at 16. SAP moved to transfer to the Eastern District of Pennsylvania or the Northern District of California. *See* No. 3:17-CV-187, ECF No. 1 ¶ 27, ECF No. 28 at 25.

California).[8]  Amazon Web Services likewise has presences in Palo Alto and San Francisco, apparently including jobs relating to the accused products.[9]  Teradata has offices in four cities in the Northern District:  Mountain View, San Carlos, Santa Clara, and San Francisco.[10]

In the event those defendants also move to dismiss or transfer for lack of venue, a "sensible result" would be to transfer those cases to a district like the Northern District of California, where venue is commonly-available and proper.  *See Delta Media Grp., Inc. v. Kee Grp., Inc.*, No. 5:07-CV-01597, 2007 WL 3232432, at *6 (N.D. Ohio Oct. 31, 2007).

**C.      In Addition to Failing on Venue, the Complaint Should Be Dismissed Because It Fails to State a Plausible Claim for Patent Infringement**

**1.      The Complaint Must Allege Facts For Each Claim Limitation.**

Since the abrogation of Form 18,[11] federal courts have since consistently required that patent complaints must allege non-conclusory facts that make liability "plausible," i.e., facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also*, *e.g.*, *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-cv-6795, 2017 WL 2311407, at *4 (N.D. Cal. May 26, 2017); *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016).  "[A] formulaic recitation of the elements of a cause of action will not do," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and merely "conclusory" allegations are "not entitled to be assumed true."  *Id.* at 578.

---

[8]      *See*   https://www-356.ibm.com/partnerworld/wps/servlet/ContentHandler/isv_inv_tsp_iic_ silicon_valley_overview; https://www.research.ibm.com/labs/almaden.

[9]  *See* https://www.amazon.jobs/en/jobs/550502; https://www.amazon.jobs/en/jobs/550215.

[10]  *See* http://www.teradata.com/contact-us/US-Offices.

[11] Form 18 of the Federal Rules of Civil Procedure provided a generic form setting forth minimal requirements for pleading patent infringement.  It was abrogated in December 2015.

19

Since a patent is infringed only if the accused product meets every limitation of at least one claim, *see Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1215 (Fed. Cir. 2014), there must be factual allegations in the complaint showing *how* every element of a claim in the patent is allegedly satisfied by the accused products. *See*, *e.g.*, *Novitaz*, 2017 WL 2311407, at *4. A complaint cannot simply "parrot claim language" and say a product meets the element; that is merely a legal conclusion, "as the claim language is what [the patentee] must show in order to prove infringement." *Id.* at *4. In other words, the "complaint must go beyond only stating in conclusory terms that each accused product or service meets the elements of" a claim. *Comcast Cable Comm'ns, LLC v. OpenTV, Inc.*, 319 F.R.D. 269, 273 (N.D. Cal. 2017); *see also*, *e.g.*, *Atlas*, 189 F. Supp. 3d at 775; *Raindance Techs., Inc. v. 10x Genomics, Inc.*, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016); *Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 804 (E.D. Va. 2014).

### 2. Plaintiffs Fail to Allege Facts Showing How The Limitations Are Met.

The Complaint here fails to state a claim for infringement for two reasons, either of which warrants dismissal: (1) Plaintiffs do not allege sufficient facts to show how each Accused Product satisfies all claim limitations, and (2) Plaintiffs do not allege that any single Accused Product, much less all of them, meets every limitation of the asserted claims.

For many claim limitations, the Complaint simply parrots the claim language and alleges, without explanation or facts, that "one or more" of the accused products meet that limitation. *See*, *e.g.*, ECF No. 1 ¶¶ 67-70 ('733 patent), 89 and 91-93 ('983 patent). This is true even though some of the Accused Products, such as HPE OpenStack 3.0 and 4.0, are based on open-source[12]

---

[12] "Open-source" refers to software for which the original source code describing its functionality is publicly available. *See*, *e.g.*, http://www.dictionary.com/browse/open-source?s=t.

platforms—and despite the fact there is extensive publicly available information describing all of the accused products. Indeed, the Complaint quotes *some* such information. *See*, *e.g.*, ECF No. 1 ¶¶ 79 n.29, 102 n.30, 120 n.31, 138 n.32. But for many of the claim limitations, there are either no facts alleged at all or the information that is quoted bears no relationship to that limitation and the Complaint offers no allegations to connect the two.

This is especially significant because the asserted claims include a number of specific requirements that the Complaint wholly fails to identify in the Accused Products. For example, claim 18 of the '733 patent (which is the only claim of that patent Plaintiffs specifically accuse HPE of infringing) requires, among other things, a plurality of host processors *each* of which must:

i) "broadcast[] . . . load information of its processor capacity and search queue length to at least one other" host processor and

ii) "bring[] its search queue of client queries into balance . . . according to a time constant responsive to receipt of" the broadcasted information, wherein that balancing must also entail

iii) "exchanging unprocessed search requests with a recipient host processor responsive to a stochastic selection process" and

iv) "exchanging a block of search requests . . . and adjusting the size of the block . . . according to relative processing speeds of host processors and inter-processor communications protocol between the host processors."

ECF No. 1 Ex. A ('733 patent) at 34:1-42. Yet the only allegation the Complaint offers for each of those requirements is a bare assertion that "one or more" of the Accused Products do it. *Cf.* ECF No. 1 ¶¶ 65 (i), 67 (ii), 68-69 (iii); 70 (iv). Moreover, in the rare instances where the Complaint does allege facts—*e.g.*, when it copies a diagram that purports to show the architecture of one of the Accused Products, HPE Helion OpenStack 3.0 (*id.* ¶ 58), and a table with "Routing Notes" purportedly associated with a different accused product, HPE Helion OpenStack 4.0 (*id.* ¶¶ 59, 66)—it fails to connect those facts to the particular requirements of the asserted patent claim.

21

*See Raindance*, 2016 WL 927143, at *2 (dismissing complaint where the plaintiff made "no attempt to relate any [of its] factual assertions with any of the asserted claims"). A complaint must "explain *how*" the features of the accused product "plausibly meets the limitations" of the asserted claims. *Scripps Research Inst. v. Illumina, Inc.*, No. 16-CV-661-JLS-(BGS), 2016 WL 6834024, at *6 (S.D. Cal. Nov. 21, 2016) (emphasis added). Simply reciting that all of these elements are met without any factual support, or even an allegation to explain how any one accused product, much less all of the accused products, allegedly does what the claims require, does not present a plausible claim for infringement. *Novitaz*, 2017 WL 2311407 at *4.

The Complaint offers similarly deficient allegations for the other patents-in-suit. Claim 1 of the '983 patent, for example, is drawn to a method of organizing database records that requires, *inter alia*, applying a mathematical technique, "principal component analysis," to select vectors and then "formulating a test based on the selected vectors" (step (f)) and "performing" that test to organize records "into clusters" (step (g)). ECF No. 1 Ex. B ('983 patent) at 30:18-39. Yet the Complaint offers no factual allegations regarding the test the accused products allegedly formulate and perform to infringe that claim. *See* ECF No. 1 ¶¶ 92-93 (parroting claim language). And the only fact that is alleged, a diagram that Plaintiffs copy for a different claim limitation, *id.* ¶ 90, says nothing about principal component analysis, much less the "test" that must be formulated and performed to satisfy Plaintiffs' patent claim.

The allegations regarding the '612 and '106 patents are even more threadbare. The only claims identified in the Complaint ('612 claim 1 and '106 claim 14) both require "defining a function . . . [that] comprises a combination of measures of entropy and adjacency" and "partitioning" based on the same. ECF No. 1 Ex. D ('106 patent) at 31:26-32:3; ECF No. 1 Ex. C ('612 patent) at 30:31-34. But none of the allegations regarding the Accused Products say anything

about the function those products allegedly use to partition data that relies upon a "combination of measures of entropy and adjacency," as required by the patent claims. *See* ECF No. 1 ¶¶ 129-130 ('106 patent); *see also id.* ¶ 110 ('612 patent). Instead, the Complaint simply states "on information and belief" that these measures are used in "one or more" of the Accused Products, followed by a block quote from documentation that never once mentions either entropy or adjacency. *Id.* There are no facts alleged that relate specifically to any of the Accused Products. And there is nothing in the Complaint that shows how the information in the block quotes supposedly relates to the "measures of entropy and adjacency" required by claim 14 of the '106 patent and claim 1 of the '612 patent as opposed to the myriad of other measures and techniques known for partitioning data in a database. *See Raindance*, 2016 WL 927143, at *2 (dismissing complaint for failing to connect factual allegations to claim limitations); *Scripps*, 2016 WL 6834024, at *6 (same); *e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-CV-05790-JST, 2016 WL 4427209, at *5 (N.D. Cal. Aug. 22, 2016) (same).

This is an important distinction because the patents-in-suit acknowledge that there were many "[e]xisting database indexing methods" and parallel computing schemes in the prior art. *See, e.g.,* '612 patent at 1:25-42 (identifying various prior art techniques). Because there are a multitude of techniques for partitioning and searching for data, simply alleging facts to show that a product involves databases and multiple processors in some capacity does not make out a plausible claim for infringement of the particular techniques defined by the limitations recited in the claims of the patents-in-suit. "Because the failure to practice even a single limitation is all that separates innovation from infringement, 'there is always an obvious alternative explanation where a plaintiff does not allege facts about each element,'" and thus the complaint does not satisfy *Iqbal*. *Tai v. Minka Lighting, Inc.*, No. CV-16-02810-PHX-DLR, 2017 WL 568519, at *3 (D. Ariz. Feb. 13,

2017) (quoting *Atlas IP*, 189 F. Supp. 3d at 775). That is especially clear where, as here, the complaint focuses only on the feature admittedly present in the "prior art." *Asghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15-CV-478, 2016 WL 1253533, at *4 (E.D. Va. Mar. 22, 2016).

### 3. There is No Allegation That Any One Product Meets All the Limitations.

The Complaint is deficient for the additional reason that it does not allege—even "on information and belief"—that any one, much less all, of the Accused Products meet all of the limitations of the asserted claims. For each of the patents-in-suit, the Complaint accuses multiple products and/or multiple different features within those products of infringement. *See* ECF No. 1, ¶¶ 56 ('733 patent), 85 ('983 patent), 108 ('612 patent), 126 ('106 patent). But for most claim limitations, the Complaint says only that the limitation is satisfied by "*one or more* of" the multiple products and features it identifies. *See, e.g., id.* at ¶¶ 58-63 (emphasis added). That allegation is consistent with one limitation being met only by one Accused Product, and another limitation of the same patent claim being met only by a different Accused Product. In such instance, neither one would meet every limitation of any claim, and thus there would be no infringement.

For example, the Complaint accuses four different products of infringing claim 18 of the '733 patent. ECF No. 1 ¶¶ 56, 74. Yet, for many of the claim limitations, the Complaint alleges only that the limitation is met by "one or more" of those products—not that any one product meets all of the limitations of claim 18 or any other claim of the '733 patent. *Id.* ¶¶ 58-63, 65-68, 70. The Complaint's allegations for the other patents-in-suit are similarly deficient. *See id.* ¶¶ 87-93 ('983 patent), 110-112 ('612 patent), 129-130 ('106 patent). Because a product cannot infringe unless that same product satisfies *all* of the claim limitations, *see Ericsson,* 773 F.3d at 1215, Plaintiffs' vague "one or more" allegations—which do not allege that "any one product . . . performs all elements" of any patent claim—do not state a plausible claim for infringement.

*TeleSign Corp. v. Twilio, Inc.*, No. CV 16-2106 PSG (SSX), 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the case for improper venue, or alternatively transfer it to the Northern District of California, and dismiss the case for failure to plead a plausible claim for patent infringement.

Dated: August 31, 2017                              Respectfully Submitted,

                                                    PAINE BICKERS LLP
*/s/ Mark N. Reiter*                                Matthew J. Evans (BPR #017973)
GIBSON, DUNN & CRUTCHER LLP                         Lindsey M. Collins (BPR #033426)
Mark N. Reiter (admitted pro hac vice)              900 South Gay Street, Suite 2200
mreiter@gibsondunn.com                              Knoxville, TN 37902-1821
Michael A. Valek (admitted pro hac vice)            Tel: (865) 525-0880
mvalek@gibsondunn.com                               Fax: (865) 521-744
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Tel: (214) 698-3100
Fax: (214) 571-2900

GIBSON, DUNN & CRUTCHER LLP
Neema Jalali (admitted pro hac vice)
njalali@gibsondunn.com
555 Mission Street
San Francisco, CA 94105-0921
Tel: (415) 393-8200
Fax: (415) 393-8306

*Attorneys for Defendants Hewlett Packard Enterprise Company*
*and HP Enterprise Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ *Mark N. Reiter*
Mark N. Reiter